**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**MALLORY COMEAUX, AND**
**JOHN PERRY COMEAUX, AS**
**SURVIVING PARENTS OF B.C., AND**
**TOGETHER ON BEHALF OF THEIR SURVIVING**
**MINOR CHILD B.C.**                                                    **PLAINTIFFS**

**VS.**                            **CIVIL ACTION NO.: 1:20-CV-00057-HSO-JCG**

**RANDALL WADE MOORE, ETI, INC.,**
**AND TALON CONTRACTING LLC**
        **DEFENDANTS**

**CONSOLIDATED WITH**

**INDIAN HARBOR INSURANCE**
**COMPANY**                                                            **PLAINTIFF**

**VS.**                            **CIVIL ACTION NO.: 1:20-CV-00268-HSO-JCG**

**RANDALL MOORE, TALON**
**CONTRACTING, LLC F/K/A APOLLO**
**INDUSTRIES, LLC, ETI, INC., AND**
**MALLORY COMEAUX, AND JOHN**
**PERRY COMEAUX, INDIVIDUALLY AND**
**AS THE SURVIVING PARENTS OF B.C., AND**
**TOGETHER ON BEHALF OF THEIR SURVIVING**
**MINOR CHILD B.C.**                                                   **DEFENDANTS**

---

**DEFENDANTS, RANDALL MOORE; TALON CONTRACTING, LLC F/K/A**
**APOLLOINDUSTRIES, LLC; AND ETI, INC.'S, RESPONSE TO PLAINTIFF'S**
**MOTION TO COMPEL DISCOVERY [DOC. 61]**

---

Defendants, Randall Moore ("Mr. Moore"); Talon Contracting, LLC f/k/a Apollo

Industries, LLC ("Talon"); and ETI, Inc. ("ETI") (collectively, Defendants), by and through

counsel, file this Response to Plaintiff, Indian Harbor Insurance Company's ("Indian Harbor"),

Motion to Compel Discovery [Doc. 61], and would show unto the Court the following:

## **BACKGROUND**

On September 9, 2019, Mr. Moore left New Orleans, Louisiana to drive to Picayune, Mississippi to spend the night there before visiting Stennis Space Center the next morning in order to develop work for Talon, an LLC for which Mr. Moore is both a member and an employee.  Mr. Moore was driving a vehicle that Talon borrowed from ETI, a separate company for which Mr. Moore is the president and co-owner.  Before reaching his destination, Mr. Moore was involved in an automobile accident in Picayune with a vehicle operated by Mallory Comeaux ("Mrs. Comeaux") and in which her two minor children were passengers.  One of the minor children died and Mrs. Comeaux and her other child suffered certain injuries as a result of the accident. While Mr. Moore has not be indicted with respect to his involvement in the accident at this time, a criminal investigation remains ongoing and there is a legitimate threat that Mr. Moore will be charged with felony DUI resulting in death or other related charges.

The Comeauxs filed suit in this Court against Mr. Moore, Talon, and ETI, alleging that Mr. Moore's negligence caused the accident at issue. Talon's automobile insurance carrier, Indian Harbor, subsequently filed a declaratory judgment seeking a declaration of no coverage for the Comeauxs' claims against Mr. Moore, Talon, and ETI under primary and excess policies issued to Talon as they assert that Mr. Moore was not an employee acting within the course of Talon's business at the time of the accident.  These two actions have been consolidated by the Court.

On November 16, 2020, Defendants served their Pre-Discovery Disclosures in this case along with the voluntary production of 135 pages of documents identified therein. On November 16, 2020, Indian Harbor served separate sets of interrogatories and requests for production on each Defendant.  After obtaining extensions from Indian Harbor, Defendants served their respective objections and responses to the interrogatories and requests for production on January 12, 2021.

2

After Indian Harbor complained that many of Defendants' responses were deficient, Defendants served supplemental responses on March 10, 2021.  In its Motion, Indian Harbor continues to claim that Defendants' responses are deficient notwithstanding the supplementation provided. However, the documents and information that Indian Harbor continues to seek from Defendants are privileged and/or otherwise undiscoverable. Therefore, Defendants respectfully request the Court to deny Indian Harbor's Motion.

## **ARGUMENT AND AUTHORITIES**

"[D]istrict court[s] exercise[ ] significant discretion in ruling on a motion to compel." *Barnhardt v. Meridian Municipal Separate Sch. Dist.*, No. 4:65–cv–1300 HTW–LRA, 2012 WL 1067105, at *6, n.5 (S.D. Miss. Mar. 28, 2012) (quoting *Gile v. United Airlines*, 95 F.3d 492, 495-96 (7th Cir. Ill 1996)).  According to the court in *Barnhardt*:

> The district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case. FED. R. CIV. P. 37(a)(4)(B), (C). Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties.

*Id.* (quoting *Gile*, 95 F.3d at 495-96).

"Under the federal discovery rules, any party to a civil action is entitled to all information **relevant** to the subject matter of the action before the court **unless such information is privileged**." *Isokinetics, Inc. v. Duratech Medical, Inc.*, No. 1:06CV292–SA–JAD, 2008 WL 2563370, at *1 (citing FED. R. CIV. P. 26(b)(1)) (emphasis added).  All information sought by Indian Harbor through its Motion to Compel is irrelevant and/or privileged. As such, Defendants respectfully submit that it would be an abuse of the Court's discretion to grant Indian Harbor's Motion to Compel.

## A.    <u>Defendants' Assertions of the Fifth Amendment Are Valid.</u>

"As the Fifth Circuit has observed, '[e]ven if the rules did not contain specific language exempting privileged information, ... the Fifth Amendment would serve as a shield to any party who feared that complying with discovery would expose him to a risk of self-incrimination.'" *Isokinetics*, 2008 WL 2563370, at *1 (quoting *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979)).  "The fact that the privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection." *Id.* (citing *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977); *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924)).  Thus, a party to a civil proceeding "is under no obligation to disclose to [another party in the civil proceeding] information that he reasonably believe[s] might be used against in as an accused in a criminal prosecution." *Wehling*, 608 F.2d at 1086.  *See also Isokinetics*, 2008 WL 2563370, at *2 (same).

Moreover, the fact that criminal charges are not currently pending against a party to a civil action in no way diminishes that party's right to assert the protections of the Fifth Amendment. As addressed by the district court in *Smith v. Coldwell Banker Real Estate Corp.*, No. 4:05cv166-M-A, *et al.*, 2007 WL 9735059, at *1 (N.D. Miss. July 27, 2007):

> [T]he law in Mississippi is well settled – sworn testimony given by an individual in a civil case may be later used against him in a criminal action, so long as the statement was voluntarily given. *Reed v. State*, 523 So.2d 62, 66 (Miss. 1988) (A defendant's confessions, "when shown to be voluntarily made, are admissible against him even though he does not become a witness, and this does not violate his Fifth Amendment rights.") (citations omitted). In the *Reed* case, an individual gave a deposition in a civil case. *Id.* at 63. At the deposition, he was not represented by counsel and there were no criminal charges pending against him. *Id.* After the deposition, criminal charges were brought against him, and he did not testify at his trial on those charges. *Id.* at 65. When the state offered the deposition into evidence at the criminal trial, the defendant objected, claiming that admission of the deposition into evidence at his criminal trial violated his Fifth Amendment right against self incrimination and constituted a comment on his refusal to testify in his criminal trial. *Id.* At 66. The Mississippi Supreme Court held that the deposition

was admissible under the Mississippi Rules of Evidence and Rules of Criminal Procedure and did not violate the defendant's Fifth Amendment rights as he had waived those rights in the giving of his deposition, despite the fact that no criminal charges were pending against the defendant at the time the testimony was given. *Id.* at 68.

Thus, if a party to a civil action wishes to assert his Fifth Amendment privilege not to incriminate himself in a potential future criminal action, he necessarily should assert the Fifth Amendment in response to discovery requests served on him in a related civil action.  This is exactly what Defendants have done in the present case.  Defendants should not be compelled to respond to requests if such responses potentially could be used against them, or any one of them, in a potential subsequent criminal action.

In *Isokinetics*, the district court noted that while a defendant in a civil action "may invoke his Fifth Amendment right against self-incrimination to specific discovery seeking privileged information, he may not assert a blanket refusal to respond to all discovery requests on the ground they are privileged."  2008 WL 2563370, at *2.[1]  Clearly, Defendants **have not** done in the present case.  Rather, a defendant in a civil proceeding must "elect to raise or not to raise the [Fifth Amendment] defense" "as to each question."  *Id.* at *2.  Clearly, Defendants **have** done this in the present case.

Each discovery request to which Indian Harbor seeks to compel Defendants to respond notwithstanding the assertion of Fifth Amendment protections is addressed hereinbelow:

---

[1] While Indian Harbor cites *Security & Exchange Commission v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) in support of its Motion to Compel, the Fifth Circuit in that case merely held that "a blanket invocation of the fifth amendment privilege" in a civil case is improper. In *First Financial Group*, the defendant did not object to specific discovery requests, but "simply refused to respond at all to the [plaintiff's] discovery requests."  *Id.* at 668.  As such, *First Financial Group* is clearly distinguishable from the present case where Defendants have cooperated with the discovery process and have merely raised the Fifth Amendment's protections with respect to specific discovery requests.

1.    **Interrogatory No. 10**

**INTERROGATORY NO. 10:** Please detail where Moore was when he began the drive during which the collision occurred, including the specific address and a description of the location, and describing the purpose for Moore's presence at that location and the identity of any individual with who Moore met at that location.

**RESPONSE:** Moore, by and through counsel, objects to Interrogatory No. 10 on grounds that he invokes his rights, privileges and immunities guaranteed to him under the Fifth Amendment to the Constitution of the United States and the Mississippi Constitution of 1890.  Without waiving said Objection please see response to Interrogatory No. 4 and No. 9.

(*See* Moore's Supplemental Interrogatory Responses [Doc. 62-3], at p. 7.)  Interrogatory No. 4 asked Mr. Moore to "provide a detailed description of how Moore spent the day and evening of September 9, 2019, including all locations visited by Moore and his activities at those locations." (*See* Moore's Supplemental Interrogatory Responses [Doc. 62-3], at p. 3.)  Without waiving certain objections raised in response to Interrogatory No. 4, Mr. Moore responded as follows:

I arrived at my office located on 365 Canal Street in New Orleans, Louisiana between the hours of 9:00 and 10:00 AM.  Initially, I completed some payroll tasks for various companies, including Talon Contracting.  After completing these initial tasks, I worked on multiple projects for various companies.  Those tasks were generally as follows:

1)    Restructuring debt of Hi-Tech Tower Services.  I communicated with Kevin Elliot of Advance Partners and Nancy Brown the bookkeeper for Hi-Tech;

2)    I was also attempting to secure contracts for Hi-Tech to install small cell towers in New Orleans.  I communicated with Kevin Norman, Kevin Carter, and Jay Banks regarding these matters;

3)    I communicated with counsel for ETI with regard to litigation then pending against it.  I also communicated with different counsel for Talon Contracting regarding a separate piece of litigation;

4)    I worked with Pete Decoteau of Talon Contracting with respect to work at the New Orleans airport performed by Talon.  This involved communications with various contractors to secure payment for work performed by Talon;

5)    I reviewed worker's compensation claims filed against ETI, Inc. or AIM HIRE d/b/a Jibe Staffing for purposes of adjusting reserves;

6)    I also worked on issues associated with Talon's building in Ocean Springs, Mississippi;

7)    That evening I left from 365 Canal Street and travelled to Mississippi on behalf of Talon for a visit to Stennis Space Center on September 10, 2019.

(*See* Moore's Supplemental Interrogatory Responses [Doc. 62-3], at pp. 3-4.)  Interrogatory No. 9 asked Mr. Moore to "detail all automotive travel by Moore during the day and evening of September 9, 2019, including the origin and end point of each instance in which Moore operated the vehicle in question on September 9, 2019."   (*See* Moore's Supplemental Interrogatory Responses [Doc. 62-3], at p. 6.)   Without waiving certain objections raised in response to Interrogatory No. 9, Mr. Moore responded as follows:

I drove from home to my office.  Subsequent to completing work at my office, I drove from New Orleans toward 58 Big Springs Road Picayune, Mississippi. However, I was involved in the underlying accident at issue and never made it to my destination.

(*See* Moore's Supplemental Interrogatory Responses [Doc. 62-3], at pp. 6-7.)

In light of the foregoing, Defendants have advised Indian Harbor that Mr. Moore was at 365 Canal Street, New Orleans, when he began to the drive during which the collision occurred and that 365 Canal Street is the location of Mr. Moore's office at which he worked during the day of the accident.  Providing any more detail as to a description of the location and purpose for Mr. Moore's presence at that location as well as identifying any individuals with whom Mr. Moore met at the location immediately prior to driving to Mississippi potentially could amount to self-incrimination and a waiver of Mr. Moore's Fifth Amendment rights.  For instance, if Mr. Moore were compelled to identify the person(s), if any, with whom he met prior to driving to Mississippi, he potentially could be providing Indian Harbor with the identities of witnesses that potentially

could provide testimony against him in a criminal proceeding.  Mr. Moore cannot be compelled to provide the Pearl River County District Attorney's Office with a list of witnesses that could be used in his prosecution.  Likewise, Mr. Moore cannot be compelled to provide Indian Harbor with such information while the threat of such prosecution is looming.

Rather than asserting a blanket Fifth Amendment defense to all discovery requests (or even to the entirety of Interrogatory No. 10), Defendants have specifically and narrowly tailored their Fifth Amendment objection so as to cooperate with Indian Harbor and provide it with  an overview of where Mr. Moore was on the day of the accident as well as the specific address of where he left from prior to the accident, while still preserving information that could incriminate him in potential future criminal proceedings. Providing any further information to this request is not only irrelevant to Indian Harbor's declaratory judgment claims but potentially could subject Mr. Moore to self-incrimination in a potential criminal action.

Moreover, where Mr. Moore was, the purpose of his presence, and with whom he was meeting ***prior to driving*** on the night of the accident has absolutely no bearing on whether Mr. Moore was acting in the course of Talon's business ***while he was driving***, *i.e.* ***at the time of the accident***.[2]  If Indian Harbor seeks information regarding Mr. Moore's travels to Mississippi, it has

_____

[2] As noted above, the response to Interrogatory No. 10 incorporates Defendants' responses to Interrogatories No. 4 and No. 9, which includes objections based on lack of relevance and disproportionality to the needs of the case.  The burden is on the moving party to explain how the information sought is relevant, which Indian Harbor has failed to do with respect to Interrogatory No. 10.  *See Amos v. Taylor*, No. 4:20-CV-7-DMB-JMV2020 WL 618824, at *7 (N.D. Miss. Feb. 10, 2020) (holding that the movant must prove that the responding party's responses are incomplete and must explain how the information sought is relevant). Only after a party has demonstrated that the information sought is relevant will the burden shift to the party resisting discovery to show that it "is of marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* (citing *In re Urethrane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009). Conclusory assertions of necessity failed to articulate relevancy as to the information requested. *See id.* Indian Harbor asserts that the requested information has a bearing on whether Mr. Moore was within the scope of employment at the time of the accident, which directly impacts the existence or absence of coverage. However, as discussed herein, Mr. Moore's activities immediately prior to leaving for his business trip to

already been provided: Mr. Moore was driving to Picayune, Mississippi to stay overnight before

his meeting at Stennis Space Center on behalf of Talon.  Defendants do not contend and have never

taken the position that Mr. Moore was acting in the course of Talon's business immediately prior

to driving to Mississippi on the date of the accident.  In fact, Defendants freely admit that Mr.

Moore was not conducting business for Talon immediately prior to leaving on his business trip to

Mississippi.  As such, where Mr. Moore was, what he was doing, and with whom he was meeting

has absolutely no relevance to Indian Harbor's claims whatsoever.  Thus, providing more

information in response to Interrogatory No. 10 would be of no benefit to Indian Harbor's claims

in this case but could create the real risk of self-incrimination by Mr. Moore. This is exactly what

the Fifth Amendment protects against.

### 2.    Interrogatory No. 11

> **INTERROGATORY NO. 11**: Please identify any individuals with whom Moore physically interacted with or spoke to on September 9, 2019, between 3:00 pm and the time of the accident, and provide telephone numbers and addresses for all individuals identified.

> **RESPONSE:** Moore, by and through counsel, objects to Interrogatory No. 11 on grounds that he invokes his rights, privileges and immunities guaranteed to him under the Fifth Amendment to the Constitution of the United States and the Mississippi Constitution of 1890.  Moore further objects to Interrogatory No. 11 to the extent that it is vague, overly broad, unduly burdensome, and seeks information that is neither relevant to any party's claims or defenses nor proportional to the needs of the case.  Without waiving objections, Moore would respond as follows: See response to Interrogatory No. 4 and No. 9.

(*See* Moore's Supplemental Interrogatory Responses [Doc. 62-3], at pp. 7-8.)  Interrogatory No.

11 requests similar information as requested by Interrogatory No. 10.  Mr. Moore's objections and

reasons of withholding the information are essentially the same.  This response again directed

Indian Harbor to the information detailed in the responses to Interrogatories No. 4 and No. 9,

---

Mississippi have no relevance to the issue of whether the drive itself was within the conduct of Talon's business.

quoted above. These responses provide information regarding Mr. Moore's work conducted on the day of the accident prior to leaving for Mississippi on his work trip for Talon. Identifying every person with whom Mr. Moore interacted on September 9, 2019, between 3:00 pm and the time of the accident, again is tantamount to a request for list of persons who potentially could be called as witnesses against him in a criminal proceeding. Mr. Moore is not required to provide such a list to the Pearl River County District Attorney's Office and cannot be compelled to provide it to Indian Harbor in this civil action.

Moreover, as with Interrogatory No. 10, Moore does not contend that he was about Talon's business immediately prior to leaving New Orleans to drive to Picayune. As such, exactly where Mr. Moore was, what he was doing, and with whom he was meeting, if anyone, immediately ***prior to driving to Picayune*** is of absolutely no relevance to whether or not he was acting within the course of Talon's business ***while he was driving to Picayune***. Indian Harbor has made conclusory assertions that the information sought has a direct bearing on determining whether coverage exists. However, Indian Harbor has not made any argument logically connecting the identity of individuals with whom Mr. Moore interacted on the day of the accident to the issue of whether or not his trip to Mississippi was within the course of Talon's business. Indian Harbor could have limited such requests to information specific to the work trip to Mississippi. Instead Indian Harbor's overly broad requests far overreach the proportional needs of the case and seek information that has no relevance to any party's claims or defenses in violation of Federal Rule of Civil Procedure 26.

### 3.   Request for Production No. 21

**REQUEST FOR PRODUCTION NO. 21:** Copies of any and all receipts for any lodging, meals and/or entertainment expenses incurred by Mr. Moore, either in a personal or professional capacity, on the date of the incident at issue.

**RESPONSE:** Moore, by and through counsel, objects to Request No. 21 on grounds that he invokes his rights, privileges and immunities guaranteed to him under the Fifth Amendment to the Constitution of the United States and the Mississippi Constitution of 1890.

(*See* Moore's Supplemental Responses to Requests for Production [Doc 62-3], at p. 23.)

Indian Harbor seeks production of receipts for any lodging, meals, or entertainment expenses Mr. Moore incurred on the date of the accident.  Indian Harbor again makes the conclusory statement that producing such documents would not be incriminating in any way.  However, this is incorrect.  Compelling Mr. Moore to produce any and all such documents from the day of the accident could lead to information that could be used against him in a future criminal proceeding.

Indian Harbor cites to *United States v. Velasquez*, 881 F.3d 314, 337 (5th Cir. 2018) for the proposition that "only where the act of producing [documents] is incriminating, without regard to their content" may one assert Fifth Amendment privileges as objections to requests for production.  (*See* Indian Harbor's Memorandum [Doc. 62], at p. 5.)  *Velasquez* involved a criminal defendant who refused to show a tattoo for identification purposes, which the Fifth Circuit deemed was not the same as sworn communication by a witness that relates to either express or implied assertions of fact or belief.  *Id.* at 338.  Certainly, compelling Mr. Moore to produce the documents requested could lead to potential factual assertions or disclose information that would be self-incriminating and is not being used merely for identification purposes.  As Mr. Moore is facing the potential of felony DUI charges, the nature of the documents requested Indian Harbor absolutely could lead to incriminating information that could be used against him in criminal proceedings.

The Pearl River County District Attorney's Office cannot compel Mr. Moore to produce any such documents which may be used against him in a criminal proceeding.  However, if

Defendants were compelled to produce those documents to Indian Harbor, the District Attorney's Office would not need to get them from Mr. Moore as they could just subpoena the documents from Indian Harbor.  Mr. Moore should not be compelled to assist the District Attorney's Office in prosecuting a criminal action against him by way of Indian Harbor.

Further, Indian Harbor's vague and overly broad request for "any and all" receipts from the entire date necessarily seeks documents that are neither relevant to any party's claims or defenses nor proportional to the needs of the case.   How Mr. Moore spent money on the day of the accident has absolutely nothing to do with whether his drive from New Orleans to Picayune was for the purposes of Talon's business.  As such, while there would be a bona fide risk of self-incrimination posed by Defendants' being compelled to produce documents in response to Request No. 21, there is absolutely nothing to be gained by Indian Harbor that would be relevant to its declaratory judgment claims in this action.

**B.**     **Defendants' Assertions of the Attorney-Client Privilege, Work Product Doctrine, and Related Privileges Are Valid.**

Indian Harbor asserts that the Defendants have objected improperly to certain requests for production "to the extent that [they] seek[ ] documents protected by the attorney-client privilege and/or work product doctrine, documents generated in anticipation of litigation, and or documents containing protected attorney mental impressions."  (*See* Indian Harbor's Memorandum [Doc. 62], at pp. 6-7.)  Indian Harbor's arguments are wholly without merit.

Mississippi law governs application of the attorney-client privilege in this case.  *See* FED. R. EVID. 501.  The privilege is a matter of public policy in Mississippi.[3]  Mississippi Rule of

---

[3] *See Jackson Med. Clinic for Women, P.A. v. Moore*, 836 So. 2d 767, 773 (Miss. 2003) (citing *Metro. Life Ins. Co. v. Aetna Cas. & Surety Co.*, 730 A.2d 51, 52-53 (Conn. 1999)).  *See also U.S. v. Hankins*, 631 F.2d 360, 365 (5th Cir. 1980) (Miss.) (quoting *U.S. v. Jones*, 517 F.2d 666, 674 (5th Cir. 1974) (holding that the attorney-client privilege" is a creature of public policy calculated to encourage people to seek legal advice on the basis of frank, useful communications").

Evidence 502(b)(1) defines the privilege in relevant part as follows: "A client has a privilege to refuse to disclose—and to prevent others from disclosing—any confidential communications made to facilitate professional legal services to the client: (1) between the client or the client's representative and the client's lawyer or the lawyer's representative[.]" "[T]he privilege relates to and covers all information regarding the client received by the attorney in his professional capacity and in the course of his representation of the client." *Barnes v. State*, 460 So.2d 126, 131 (Miss. 1984). "The privilege exists to ensure a client fully informs his attorney and thus enables the attorney to provide sound legal advice." *Dunn*, 122 F.R.D. at 509. "Whenever [as here] legal advice of any kind is sought from a professional legal advisor, the communications relevant to that purpose made in confidence by the client are, at the instance of the client, permanently protected." *Id.* (quoting *Wonneman v. Stratford Securities Co.*, 23 F.R.D. 281, 285 (S.D.N.Y. 1959)) (emphasis omitted).

"The work-product doctrine is governed by Fed. R. Civ. P. 26(b)(3), which states, in part, that '[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" *Jarrell v. Shelter Mut. Ins. Co.*, No. 2:18-cv-183-KS-MTP, 2019 WL 3400701, at *2 (S.D. Miss. July 26, 2019) (quoting Fed. R. Civ. P. 26(b)(3)).[4] "The work product doctrine does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Id.* (quoting *Liberty Mutual Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009)). "The work product doctrine insulates a

---

[4] Notes generated by liability insurance adjusters fall constitute privileged work product when created in anticipation of litigation. *See Huyett v. Omni Ins. Co.*, 1:12cv51LG-JMR, 2012 WL 12883215 at *1 (S.D. Miss. Nov. 29, 2012).

lawyer's research, analysis, legal theories, mental impressions,[5] notes and memoranda of witnesses' statements from an opposing counsel's inquiries."  *Dunn v. State Farm Fire & Case. Co.*, 122 F.R.D. 507, 510 (N.D. Miss. 1988).

Materials prepared in anticipation of litigation are protected by the doctrine.  *See id.*  "As a general rule, the material sought to be discovered, to come within the work product privilege, must have been prepared 'with an eye to litigation' and not 'in the ordinary course' of business."  *Haynes v. Anderson*, 587 So. 2d 615, 618 (Miss. 1992) (citing *Sterling Drug, Inc. v. Harris*, 488 F. Supp. 1019, 1026 (S.D.N.Y. 1980); *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir.1982)).  Moreover, "the doctrine can apply [even] where litigation is not imminent, as long as the primary motivating purpose behind the creation of the documents is to aid in possible future litigation."  *Wright v. Life Investors Ins. Co. of Am.*, No. 2:08-CV-03-P-A, 2010 WL 481003, at *1 (N.D. Miss. Feb. 4, 2020) (citing *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000)).

Both federal and state courts in Mississippi employ a "case-by-case approach" to determine at what point an insurer's file materials were generated in anticipation of litigation.  *See id.*  "In using this approach . . . courts should consider 'the nature of the documents, the nature of the litigation [and investigation], the relationship between the parties, and any other fact peculiar to the case.'"  *Id.*  (quoting *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C. 1988); *Carver v. Allstate Ins. Co.,* 94 F.R.D. 131, 134 (S.D. Ga. 1982)).

### 1.  Request for Production No. 13

**REQUEST FOR PRODUCTION NO. 13:** Please provide copies of any correspondence sent or received by Moore or his agents, to any insurance company, producer, or broker, related to the accident (including but not limited to, any notice

---

[5] "An attorney's thoughts [are] inviolate . . . ."  *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *El Paso Co.*, 682 F.2d at 542 (The "invasion of a lawyer's private thoughts would demoralize the profession.").

of claim, tender, demand, reservation of rights, declination or acceptance of coverage).

**RESPONSE:** Moore, by and through counsel, objects to Request No. 13 to the extent that it seeks documents protected by attorney-client privilege and/or work product doctrine, documents generated in anticipation of litigation, and/or documents containing protected attorney mental impressions.  Without waiving said objections Moore will produce discoverable documents to this request and will produce a privilege log identifying all non-discoverable responsive documents prior to filing of Plaintiff's Complaint.  Further, Moore refers Plaintiff to those documents identified in Defendant's Voluntary Disclosure.

(*See* Moore's Supplemental Responses to Requests for Production [Doc 62-3], at pp. 20-21.)[6]

Indian Harbor seeks copies of any correspondence from the Defendants or their agents (which would include their attorneys) to any insurance company, producer, or broker.  It is simply an incorrect statement of law that such documents necessarily do not enjoy the protections of the attorney-client privilege and/or work product doctrine merely because they were "sent to or received from a third party" as Indian Harbor suggests.  In light of the serious personal injuries, including the death of a child, resulting from the automobile accident at issue, it is clear that any communications between Defendants/their attorneys and Defendants' insurance carriers would have been with any eye toward litigation and, therefore, privileged.  Notwithstanding the fact that many of the documents sought by Indian Harbor are privileged, Defendants have produced non-privileged documents responsive to the request and have advised Indian Harbor that they will produce a privilege log identifying any privileged documents responsive to the request that have been withheld from production.  Defendants should be compelled to do no more.

## 2. **Request for Production No. 26**

**REQUEST FOR PRODUCTION NO. 26**: Please produce copies of any and all emails, correspondence, texts or other written communication by or between Moore, Apollo, ETI, Inc. and any third party, or any combination thereof, for the three days leading up to and including the date of the incident.

---

[6] Indian Harbor directed identical requests to ETI (Request No. 8) and to Talon (Request No. 8), to which ETI and Talon respectively provided responses identical to Moore's response to Request No. 13.

**RESPONSE**: Moore, by and through counsel, objects to Request No. 26 on grounds that it is so vague, ambiguous, unlimited as to scope, overly broad, and unduly burdensome that Moore cannot reasonably produce documents in response to this request as written without further limiting language or specifications.  Moore further objects to Request No. 26 to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine, and/or documents generated in anticipation of litigation, and/or documents containing attorney mental impressions.  Moore further objects to Request No. 26 to the extent it seeks documents containing proprietary information or information of an otherwise confidential and/or commercially sensitive in nature.  Moore further objects to the extent that Request No. 26 seeks documents that are neither relevant to any party's claim or defenses in this action nor proportional to the needs of this case.

(*See* Moore's Supplemental Responses to Requests for Production [Doc. 62-3], at p. 25.)

Absent some form of limiting instructions or specifications, this request by Indian Harbor is so far overreaching and highly burdensome that Defendants cannot reasonably produce all of the documents requested.  Any and all materials emails, correspondence, texts or other written communication by or between the parties requested would include a vast amount of information.  Seeking all forms of communication between Mr. Moore, two business entities, and any third party surely overreaches the proportional needs of this case.  Further, this massive request surely would include information that is not relevant to any claims or defenses in this action by any party.   For example, the request is so broad that it potentially encompasses intimate communications between Mr. Moore and his wife. Such communications clearly have nothing to do with this case whatsoever, and Indian Harbor certainly is not entitled to them.

Another category of irrelevant communications which Request No. 26 seeks in an overly broad fishing expedition includes communications protected by the attorney-client privilege and work product doctrine.  Indian Harbor asserts that because it "seeks correspondence exchanged *prior to* the accident, there is no colorable argument that the materials are subject to work product protection."  (*See* Indian Harbor's Memorandum [Doc. 63], at p. 7 [emphasis in original].)  Indian Harbor is incorrect given that, as addressed in Mr. Moore's response to Interrogatory No. 4 quoted

above, on the day of the accident Mr. Moore had communications with counsel for ETI and with separate counsel for Talon regarding separate, unrelated pieces of litigation then pending against the two separate companies. Indian Harbor clearly is not entitled to discover the content of such communications which certainly are protected by the attorney-client privilege and the work product doctrine despite the fact that they took place prior to the automobile accident at issue in this case.

In light of the foregoing, Defendants respectfully request this Court to deny Indian Harbor's Motion to Compel with respect to this request absent some significant limitations or specifications as to the communications required for production.[7] Defendants are more than happy to produce non-privileged communications relating the purpose of Mr. Moore's business trip to Mississippi. Any other communications simply would be irrelevant to any party's claims or defenses and would be disproportionate to the needs of the case.

C.    **Defendants' Objections Concerning Tax Filings and Receipts and/or Reimbursement Requests Are Valid.**

Indian Harbor asserts that Defendants have made severely "unreasonable" objections to certain Request for Production dealing with three years' worth of tax filings by each of the Defendants, as well as an entire year's worth of receipts and reimbursements from Mr. Moore. Indian Harbor argues "[t]he party that resists discovery 'must show specifically how each interrogatory is not relevant or how each question is overboard, burdensome or oppressive.'" (*See* Indian Harbor's Memorandum [Doc. 62], at p. 8 [quoting *Stallings v. Wayne Cty.*, No. 2:18-cv-66-KS-MTP, 2020 WL 1892260, at *1 (S.D. Miss. Apr. 16, 2020) (quoting *McLeod, Alexander,*

---

[7] Additionally, Defendants assert that this request would potentially compel the Defendants to produce documents that contain proprietary information or information of an otherwise confidential and/or are commercially sensitive in nature. Indian Harbor has no objection to the redaction of this information from any documents produced.

*Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)].)  However, the discovering party has the initial burden to establish relevance.  *See Amos,* 2020 WL 618824 at \*7.  Indian Harbor has failed to show how years' worth of tax returns and receipts and/or reimbursements will show that Mr. Moore was conducting Talon's business ***at the time of the accident***.  The requests and responses at issue are as follows:

> **REQUEST FOR PRODUCTION NO. 20**: Copies of all tax filings by Mr. Moore for the three years prior to the incident at issue
>
> **RESPONSE**: Moore, by and through counsel objects to Request No. 20 on grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  Moore further objects to Request No. 20 on grounds that it seeks documents that are neither relevant to any party's claims or defenses nor proportional to the needs of the case. This is a declaratory judgment action regarding the existence of coverage.  Moore's tax returns do not address any issue raised in the Complaint filed for declaratory judgment.[8]
>
> **REQUEST FOR PRODUCTION NO. 22**: Copies of any and all receipts and/or requests for reimbursement submitted by or on behalf of Mr. Moore to ETI, Inc. and/or ETI Group for one year prior to the incident at issue.
>
> **RESPONSE**: Moore, by and through counsel, objects to No. 22 on grounds that it is vague, ambiguous, overly broad, and unduly burdensome.  Moore further objects on the grounds that Request No. 22 seeks documents that are neither relevant to any party's claims or defenses in this declaratory judgment action intended to declare insurance coverage issues nor proportional to the needs of the case.

(*See* Moore's Supplemental Responses to Requests for Production [Doc. 62-3], at pp. 8-10.)

The insurance coverage questions in this declaratory judgment action turn, in large part, on whether Mr. Moore was an employee of Talon and acting within the course of Talon's business ***at the time of the accident***.  Defendants have provided proper documentation to establish the relationship between Mr. Moore, Apollo, and ETI in their Voluntary Disclosures. As such, requesting three years' worth of tax filings is unnecessary and irrelevant as to what Mr. Moore was

---

[8] Indian Harbor served identical requests to ETI (Request No. 16) and Talon (Request No. 15) for their respective tax records.  ETI's and Talon's respective responses are identical to Mr. Moore's response to Request No. 20.

doing and what business he was doing it for at the time of the accident.  Even if Mr. Moore's tax filings had any relevance to this case, which they do not, clearly Indian Harbor's requests for three years' worth of tax filings from not only Moore, but also from ETI and Talon, are overly broad and grossly disproportionate to the needs of the case.  That is, even if tax filings had any relevance to any party's claims or defenses, which they do not, only Mr. Moore's tax filings for 2019, *i.e.* the year in which the accident occurred, could have even a remote bearing on the issues in the case.

Likewise, Indian Harbor's request for an entire years' worth of "any and all receipts and/or requests for reimbursements submitted by or on behalf of Mr. Moore to ETI, Inc. and/or ETI Group" is unnecessary, irrelevant, overly broad, vague, and unduly burdensome for similar reasons.  Every transaction that Mr. Moore has incurred on behalf of ETI throughout an entire calendar year will not assist the Indian Harbor anymore than the documents already provided by Defendants.  The documents sought necessarily include documents that are entirely irrelevant to the issue of whether Mr. Moore was within the course and scope of his employment with Talon at the time of the accident. Surely an entire year's worth of receipts and/or requests for reimbursement on behalf of Mr. Moore to ETI is overly broad and vague.  Indian Harbor could have requested receipts and/or reimbursement information specific to the trip to Mr. Moore's trip to Mississippi and the purposes for which he was traveling to Mississippi.  However, Indian Harbor did not specifically tailor its discovery request to seek such relevant information.  Rather, Indian Harbor cast an enormously wide net in its fishing expedition for an entire year's worth of expenditures that Mr. Moore submitted to a business entity for which he was not even working at the time of the accident. Without question, this request is overly broad, vague, and unduly burdensome. Therefore, Defendants request this Court deny Indian Harbor's Motion to Compel as to the foregoing requests.

## <u>CONCLUSION</u>

All of the information and documents Indian Harbor requests the Court to compel Defendants to provide are either protected from discovery by privilege or are otherwise irrelevant to the claims and defenses asserted in this action.  For all of the foregoing reasons, Defendants respectfully request the Court to deny Indian Harbor's Motion to Compel and further request that they be provided with any other relief appropriate under the circumstances.

This the 4th day of June, 2021.

Respectfully submitted,

**RANDALL MOORE; TALON CONTRACTING, LLC f/k/a APOLLO INDUSTRIES, LLC; and ETI, INC.**

BY:  */s/Joseph W. Gill*_____
J. HENRY ROSS (MSB #5668)
ERIC T. GRANBERRY (MSB#106113)
CURRIE JOHNSON & MYERS, P.A.
925 Tommy Munro Drive, Suite H
Biloxi, MS 39532
Telephone: (228) 385-1010
Telecopier: (228) 385-1011
hros@curriejohnson.com
egranberry@curriejohnson.com

JOSEPH W. GILL (MSB #102606)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Drive
Flowood, MS   39232
P. O. Box 750
Jackson, MS   39205-0750
Telephone: (601) 969-1010
Telecopier: (601) 969-5120
jgill@curriejohnson.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Joseph W. Gill, do hereby certify that I have this date electronically filed with the Clerk

of the Court using the electronic filing system a true and correct copy of the foregoing document,

who sent notification of such filing to all counsel of record.

This the 4th day of June, 2020.


*/s/Joseph W. Gill*      
JOSEPH W. GILL